## HORATIO H. HUNNEWELL vs. CHARLES B. GOODRICH & another.

1ne *St.* of 1838, *c.* 163, § 3, does not authorize an absolute sale of mortgaged premises, where the equity of redemption belongs or is mortgaged to a third person, and is not in the insolvent. But where a first mortgagee petitioned the master for a sale of mortgaged premises, and the second mortgagee also petitioned, and the master granted the first and disallowed the second petition, and the second mortgagee thereupon applied to this court for an injunction, to restrain the assignees from proceeding to sell on the petition of the first mortgagee, and praying that the premises might be sold on his own petition : It was held, that as the second mortgagee had thereby put himself in the power of the court, a sale of the equity might be ordered ; the proceeds to be applied, first, to the payment of the first mortgagee's debt, and the surplus, if any, to the payment of the second mortgagee's debt.

THIS was a petition, under the insolvent laws, against the respondents, as the assignees of George Hughes.

The petition set forth, that, on the 18th of August, 1838, Hughes, the insolvent, made a mortgage of certain real estate, to the Savings Bank for Seamen, by which, on the 14th of October, 1842, the same was assigned to George Hyde ; that Hughes, on the 23d of March, 1842, conveyed the same estate, subject to the said mortgage, to Hunnewell, the petitioner, by a deed absolute in form, but with a verbal agreement, that Hunnewell should hold the same as security for all claims and liabilities then subsisting in his favor against Hughes, or which might thereafter subsist; that, in April, 1848, Hughes applied for the benefit of the insolvent law, and on the 18th of May, following, his estate was assigned by the master to the respondents ; that, on the 16th of November, 1848, at a regular meeting of Hughes's creditors, Hyde petitioned the master to order a sale of the estate mortgaged to him, and that he might be permitted to prove for the balance, if any, of the debt thereby secured ; that, at the same meeting, Hunnewell petitioned the master for leave to sell his equity of redemption of the premises mortgaged, and to prove for the balance, if any, which might be due him ; and that, on the 20th of the same month, the master disallowed Hunnewell's petition, and, on the 28th, granted

the prayer of Hyde's petition, and ordered the assignees to sell the entire estate, and to apply the proceeds, so far as they might be necessary, to pay the debt due to Hyde, and to re- tain the surplus, if any, subject to the future order of the master.

Hunnewell, by his petition, claimed to retain the mort- gaged premises as security for several debts due to him from Hughes, all of which originated subsequently to the convey- ance from Hughes to him.

On the 28th of November, 1848, Hunnewell presented his petition to this court, setting forth the facts above stated, and praying that the respondents might be restrained from selling the mortgaged premises under the order of the master, and that the same might be sold on his petition.

*H. W. Smith,* for the petitioner, cited 4 Brown's Ch. C. 548 ; *Ex parte Topham,* 1 Madd. 38, and 2 Rose,  446 ; *Ex parte Jackson,* 5 Ves. 357 ; 2 Christian's B. L. 109, 110 ; Eden's B. L. 105, 106 ; 1 Cook's B. L. 146.

*C. B. Goodrich,* for the respondents, referred to *St.* 1838, *c.* 163, § 3 ; Rev. Sts. *c.* 2, § 6, cl. 2 ; *Ex parte Pease,* 1 Rose, 232 ; *Lanckton* v. *Wolcott,* 6 Met. 305.

FLETCHER, J.   The first question which arises is, whether the master could lawfully order the estate to be sold on the petition of Hyde ; Hunnewell then having a conveyance of the equity of redemption, and Hughes, the insolvent, having no title to the estate.   If the master had such power, it must be derived from *St.* 1838, *c.* 163, § 3.   If the master could make such sale, then Hunnewell, who held the equity of redemption, would be deprived of the right which the law gives him to redeem the estate within three years by paying off the mortgage ; that is, he would be deprived of the three years allowed by law to redeem.

If the third section of the statute of 1838 gives the master power to sell a mortgaged estate absolutely, when a third person other than the insolvent has the equity, then it must be held to repeal *pro tanto* by implication the law which allows the holder of the equity of redemption three years to

redeem. Now, it is a settled principle, that a law shall not he held to be repealed by implication, but from stern necessity. If the two statutes can be so construed as to stand together they shall be so construed. But, in the present case, the third section evidently applies only to cases where the insolvent still owns the equity, which passes to his assignees by the assignment; and does not apply to a case like this, where the equity belongs to a third person other than the insolvent. The third section, therefore, may have its appropriate effect and operation, without affecting the general law giving a right to redeem in three years. Standing solely on the power given by the third section, the master would have no right to make an absolute sale, so as to affect the right of Hunnewell to redeem. But Hunnewell voluntarily petitioned the master for a sale of the equity, the proceeds to be applied towards his debt, and that he might be allowed to prove for the balance. Now, in effect appealing from the order of the master, he petitions this court, praying that the assignees may be enjoined from proceeding to sell on the order of the master; that the sale may be made on his own application and the proceeds applied to his debt; that he may be allowed to prove for the balance; and that the court will make such other order and decree as equity and good conscience may require. He thus voluntarily submits himself and his interest in the matter to the equity jurisdiction of the court. This brings the case fully and clearly within the English cases, in which it is held, that if the holder of the equity applies to chancery he puts himself in the power of the court, and a sale of the equity may be ordered. It seems most equitable and reasonable, and for the interest of all parties, that the whole estate should be sold together, and that Hyde and Hunnewell should join with the assignees in making the conveyance.*

---

* The following order was made by the court in this case : —

It is ordered, &c., that the order of the master, directing a sale of said estate, be amended so as to read as follows, to wit : —

Ordered, that the assignees of said George Hughes do and they are hereby

---

directed to sell the property and estate in the petition of George Hyde and also in the petition of Horatio H. Hunnewell, mentioned and described, at public auction, at such time and place, on or before the 1st day of December, 1849, as they may think most beneficial to the parties interested therein, first giving twenty days' notice of such sale, by publishing, &c., and the said Hunne-well and Hyde are required and enjoined to join with said assignees in a convey-ance of said estate, so as to convey all their respective rights to and interests therein : Also that the proceeds thereof be applied, in the first instance, to the extinguishment of said Hyde's debt in his said petition mentioned, so far as necessary therefor ; and that said Hyde may be allowed to prove, for such balance, if any, as may remain unpaid, and if a balance of said proceeds remain, after payment of the amount of said Hyde's claim, ordered, that such balance be applied to the payment and extinguishment of the debt in favor of said Hunnewell, the same being first to be proved and established, and that said Hunnewell be allowed to prove against said insolvent estate such balance. if any, of his said debt, as may remain unpaid. If any surplus re-main of said proceeds, after making said payments, the same to be subject to such order in relation thereto as may hereafter be made.